IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Michael Lasharn Collins,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:21cv219 (CMH/WEF) |
| | ) |
| J.D. Oates, et al.,<br>    Defendants. | )<br>)<br>) |

MEMORANDUM OPINION

This matter is before the Court upon a Motion to Dismiss ("Motion") [Dkt. No. 30] filed by defendants J.D. Oates ("Oates"), C. Washington ("Washington"), and B. Morris ("Morris") (collectively "defendants") in this civil rights action brought by Virginia state prisoner Michael L. Collins ("plaintiff"). Plaintiff opposes the Motion. [Dkt. No. 32]. For the reasons explained below, the Motion will be granted in part and denied in part, and defendants will be directed to file, or expressly decline to file, a motion for summary judgment with respect to plaintiff's remaining claims.

**I.**

The Amended Complaint contains the following factual allegations. Plaintiff is a Virginia state prisoner who at all times relevant to this suit was housed at Deerfield Correctional Center ("DCC"), a Virginia Department of Corrections ("VDOC") facility, where, at all relevant times, defendant Oates served as the Assistant Warden, defendant Washington held the role of Inmate Program Manager, and defendant Morris was the Religious Advisor of the Faith Review Committee. [Dkt. No. 25] at 7-9.

Plaintiff has been a practicing adherent of the Nation of Gods and Earths ("NOGE") since 1989. Id. at 9. The NOGE has a symbol called the "Universal Flag," which is, plaintiff

describes cryptically, "rewarded" to followers of the religion "at a certain point." Id. at 15. The flag, once "rewarded," is meant to be worn and "must not be mixed, diluted, or tampered with in any way, shape, or form." Id. Plaintiff was "rewarded" the Universal Flag at an unspecified time during his incarceration and thus sought to work with DCC staff to obtain a medallion in its image. See generally [Dkt. No. 25]. On June 26, 2019, at Morris's request, plaintiff "provide[d] an address to a company which sold religious medallions for the NOGE." Id. at 12. After some apparent confusion, Morris once more requested the vendor's address, which plaintiff provided to him on September 10, 2019. Id. "[A]pproximately a month later," plaintiff's proposal to purchase the NOGE medallion was approved by an unidentified individual. Id. at 12-13.

On January 22, 2020, plaintiff met with defendant Washington, who requested plaintiff "provide a picture of the items [he] intended to purchase." Id. at 13. "Several days later," plaintiff "was called back to IPM Washington's office" and informed that, despite the fact that his request for a particular medallion had previously been approved, DCC officials "had located a [different] medallion" for plaintiff to purchase. Id. Plaintiff attempted to explain that the offered medallion was not consistent with his beliefs, but defendant Washington insisted that it was "Collins' only option." Id. at 14. Plaintiff pursued relief through DCC's grievance procedure, but his requests and appeals were denied. Id.

Plaintiff also claims that DCC officials did not afford the NOGE the same amount of communal worship time that it offered to other religious groups. Specifically, the Amended Complaint alleges that, on an unspecified date, plaintiff "realized" that "Christian based groups were receiving an hour and a half more communal worship time than many of the other groups." Id. at 18. Consequently, plaintiff "made [a] verbal complaint to the institution's chaplain," who explained that "the delegation of communal time was issued by the institution's administration."

Id. Plaintiff thus filed a request to defendant Oates "asking for more communal time." Id. Washington responded, informing plaintiff that additional time had been allotted to a Protestant group for "band practice." Id. Washington thus asked plaintiff whether the NOGE "had songs ... they sung." Id. at 18-19. Plaintiff responded that "it was not customary of the NOGE to form in choir." Id. at 18. Accordingly, plaintiff did not elect to form any NOGE choir and was not provided additional time to match the time provided to the Protestant group. Id. at 18-19.

Plaintiff finally alleges that he was not allowed to participate in Ramadan fasting while at DCC. With respect to this claim, the Amended Complaint alleges that the NOGE, although distinct from Islam, come[s] from the same teachings." Id. at 23. Consequently, members of the NOGE fast for Ramadan just as Muslims do. Id. In years before the VDOC recognized the NOGE as a valid religion, plaintiff participated in Ramadan "on his own by eating food purchased from commissary." Id. at 24. Despite the fact that VDOC now recognizes NOGE, plaintiff's April 2021 request to participate in Ramadan fasting was denied by Chaplain Vosburg, allegedly "based on the orders of his boss," defendant Morris. Id. at 22. Paradoxically, plaintiff asserts that denying him "the right to fast, simply denys [sic] him of the nutrients provided to those who are similarly situated." Id. at 24.

## II.

A motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider the sufficiency of a complaint, not to resolve contests surrounding facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570 (2007)). To do so, the complaint must allege specific facts in support of each element of each claim it raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. Id.

In assessing a Rule 12(b)(6) motion, a court's inquiry focuses on the complaint itself, but in assessing the complaint's adequacy, the reviewing court "may [also] consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed." Stoney Glen, LLC v. S. Bank & Tr. Co., 944 F. Supp. 2d 460, 464 (E.D. Va. 2013); see also Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006).

### III.

Plaintiff identifies three events—the denial of a religious medallion that comports with his beliefs, the denial of equal worship time as other religious groups, and the denial of the ability to participate in Ramadan fasting—which he believes violated his rights under several sources of law—the First Amendment's Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Fourteenth Amendment's Equal Protection Clause.[1] See [Dkt. No. 25].

---

[1] In the Amended Complaint's "preliminary statement," plaintiff also claims he was denied "Due Process as guaranteed by the Fourteenth Amendment of the United States Constitution." [Dkt. No. 25] at 10. To the extent plaintiff is claiming violations of a right to some level of procedural due process, this Court cannot discern any application of such a theory. To the extent plaintiff merely invokes the Due Process Clause because, through it, the First Amendment's protections apply to actions of state government officials like defendants, plaintiff is correct, see Kowalski v. Berkeley Cnty. Schools, 652 F.3d 565, 571 (4th Cir. 2011), but any such proposition does not require further discussion in this opinion.

4

### A. *Denial of Religious Medallion*

Plaintiff first argues that defendants violated his rights under the Free Exercise Clause of the First Amendment and RLUIPA in denying him the ability to obtain a particular NOGE medallion. [Dkt. No. 25] at 12-17. He additionally claims, without significant explanation, that defendants violated his rights under the Equal Protection Clause by "treat[ing] him differently from other similarly situated offenders." See [Dkt. No. 25] at 17.

Prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs, both under the First Amendment and RLUIPA. See Turner v. Safley, 482 U.S. 78, 89 (1987); Cruz v. Beto, 405 U.S. 319, 322 (1972); 42 U.S.C. § 2000cc-1(a). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Consistent with this principle, prison restrictions that impact the free exercise of religion but which are related to legitimate penological objectives do not violate the First Amendment. See Turner, 482 U.S. at 89-91. And when a burden on a prisoner's exercise of religion arises from a policy that is "the least restrictive means of furthering [a] compelling governmental interest," the policy does not violate RLUIPA. See 42 U.S.C. § 2000cc-1(a).

In this case, there is no real debate that plaintiff's inability to obtain the medallion described in the Amended Complaint represented a "substantial burden" on his ability to exercise his religious beliefs; the central question is whether the denial was justified by a sufficiently compelling governmental interest. With respect to this question, defendants argue that this case is indistinguishable from Faver v. Clarke, 24 F.4th 954 (4th Cir. 2022). There, the Fourth Circuit addressed a claim raised by a Virginia state prisoner who sought to purchase prayer oil but

5

whose beliefs did not permit him to purchase that oil from the VDOC's chosen vendor. Id. The Fourth Circuit ultimately concluded that the VDOC's "single-vendor policy"—and the accompanying prohibition on acquiring prayer oil from a different source—was the least restrictive means of furthering a compelling governmental interest and that the prisoner therefore could not prevail on his RLUIPA claim. Id. Here, defendants reason that, because in the Amended Complaint plaintiff grieved that he was "not allow[ed] to purchase an NOGE medallion from anyone other than the prison's vendor," consistent with Faver, plaintiff has failed to state any First Amendment or RLUIPA violation. [Dkt. No. 31] at 5-6.

In his Opposition to the Motion to Dismiss, plaintiff observes that VDOC Operating Procedure ("OP") 801.6 outlines out a process for inmates to purchase items "not sold by [the VDOC's] contract vender [sic]" and questions why he was unable to obtain the medallion despite it having been previously approved by prison staff. [Dkt. No. 32] at 2.

The OP plaintiff refers to does not definitively salvage his claim, but it does convince the Court that resolution of this claim at the motion to dismiss stage may be premature. Plaintiff is correct that the current version of VDOC OP 801.6[2] allows inmates to purchase "approved religious items" that are "not regularly stocked by the contract vendor." VDOC Operating Procedure 801.6 § IV(B). To facilitate such a purchase, the contract vendor must "source[] the property item," although the OP does not describe the "sourcing" process in any detail. Id. at § B(3). The policy in question also states, however, that an inmate "will not select the specific

---

[2] The Court is referring to the version of OP 801.6 available on the VDOC's website. See OFFENDER MANAGEMENT AND PROGRAMS, https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-801-6.pdf (last accessed February 13, 2023). It is possible that the version of the OP effective at the time in question did not include such language.

item purchased" and that "items designed to serve the same general purpose … [are] considered the same item." See id. at § B(4).

The Court does not read this language to suggest that the VDOC should be forced to purchase or allow in a prison *any* item an inmate claims is an icon of their religion, but the language does raise questions. For instance, if the VDOC truly has a "single-vendor policy," how does it acquire items that the contract vendor does not carry as implied by OP 801.6? To what extent does the OP in question carve out an exception to the VDOC's single-vendor policy? If the OP does create some exception to the VDOC's policy, why was plaintiff's request for a medallion—a request defendants had approved—not able to be carried out?

To the extent some exception to the single-vendor policy exists, it seems that this case could be distinguishable from Faver. Indeed, in Faver, although the VDOC's vendor sold prayer oil, the appellant's religious beliefs prevented him from using any product from a source that "that [sold] swine and idols," which the VDOC's vendor did. Faver, 24 F.4th at 956. And, pursuant to OP 801.6, any item the vendor might have procured would still have been provided to the prisoner by the vendor and thus would have been incompatible with the appellant's beliefs. Here, on the other hand, plaintiff took issue not with the desired medallion's source but with its accordance to the specific tenets of his religion. Accordingly, if the VDOC *did* have some exception to the single-vendor policy through which it could have sourced a medallion consistent with plaintiff's beliefs, it appears that its failure to do so could, in theory, have impinged on plaintiff's rights.

For these reasons, the issues identified above appear better-suited for resolution at the summary judgment stage. The Court will therefore deny the Motion to Dismiss with respect to plaintiff's medallion-based First Amendment and RLUIPA claims; however, it will grant the

7

Motion to Dismiss with regard to the medallion-based equal protection claim plaintiff seeks to raise. To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Here, with respect to this claim, the Amended Complaint merely states that "Mr. Oates and Ms. C. Washington treated him differently than offenders who are similarly situated." [Dkt. No. 25] at 15-16. Although this allegation invokes the elements of an equal protection claim, it is purely conclusory—that is, it is "devoid of any reference to factual events," see Smith v. Soc. Sec. Admin., No. GLR-16-3751, 2017 WL 1230820, at *1 (D. Md. Apr. 4, 2017). Specifically, it does not provide the names of the allegedly "similarly situated" offenders or describe the precise way in which those individuals received different treatment. Because the allegations supporting the equal protection claim are conclusory, the claim will be dismissed. See Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) ("We do not ... apply the same presumption of truth to conclusory statements and legal conclusions ....") (internal quotation marks omitted).

**B.**     *Denial of Equal Worship Time*

Plaintiff's next claim is based on defendant C. Washington's alleged refusal "to provide the plaintiff with an equal amount of worship time as other faith groups." [Dkt. No. 25] at 17. Although the Amended Complaint is somewhat difficult to understand, it appears that this claim is specifically based on allegations that a Protestant group was allowed one and a half hours of time to gather for "band practice" and that, when plaintiff requested the same amount of additional meeting time for the NOGE, his request was denied. [Dkt. No. 25] at 17-20.

As an initial matter, plaintiff does not explicitly seek relief under the First Amendment or RLUIPA for these allegations; however, the Fourth Circuit recently held that if a pro se complaint contains facts "which might plausibly convey" support for a viable legal theory, the Court and defendants should consider that claim as having been raised regardless of whether "the pled claim itself" requests relief under that theory. See Shaw v. Foreman, 59 F.4th 121, 127 (4th Cir. 2023). Consistent with Shaw, the Court has conducted a "searching treatment" of the Amended Complaint, see id. at 128, and concludes that, even if plaintiff had sought relief under the First Amendment or RLUIPA, it would not support any claim under these laws because it does not contain facts which suggest plaintiff suffered any "substantial burden."

A prison regulation imposes a "substantial burden" when it places "substantial pressure on an adherent to modify his behavior and to violate his beliefs or forces a person to choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion … on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (internal quotations and citations omitted). Here, plaintiff does not allege that he was unable to engage in any NOGE practice by not being afforded the same amount of gathering time as the Protestant group; he merely grieves the inequality itself. As a result, the Amended Complaint does not state any claim for relief under RLUIPA or the First Amendment.

Nor does the Amended Complaint state an equal protection claim based on the worship time allegations. This Court has previously observed that "the Equal Protection Clause does not command identical treatment." Blagman v. White, 112 F. Supp. 3d 534, 538 (E.D. Va. 2000). Instead, "it is constitutionally sufficient in the prison context for prison officials to provide inmates belonging to various religions a "reasonable opportunity," consistent with valid

9

penological concerns, to practice their religion, and that this opportunity must be "comparable" to the opportunities afforded inmates belonging to mainstream religions." Id. (quoting Cruz v. Beto, 405 U.S. 319, 322 (1972)). Here, although the Amended Complaint undeniably alleges that a Protestant group was provided an hour and a half for band practice, time that the NOGE was *not* provided, the pleading makes clear that the NOGE would have been offered additional time to engage in similar activity, such as choir practice, had it so desired. See [Dkt. No. 25] at 17-19 (alleging that defendant Washington "suggest[ed] that [plaintiff] form a choir to receive the time [he] requested"). Consequently, the Amended Complaint does not allow for an inference that the NOGE has been denied a "comparable" opportunity to gather and therefore fails to state a viable equal protection claim on the facts alleged.

### C. *Denial of Recognized Participation in Ramadan*

Plaintiff's final claim relates to defendant Morris's alleged denial of plaintiff's "request to participate in the month of Ramadan fast." [Dkt. No. 25] at 22. The Amended Complaint contains little by way of factual allegations related to this claim; it merely alleges that plaintiff's grievances seeking permission to participate in Ramadan fasting were denied and that "[f]or the past four years Collins [has] fast[ed] on his own by eating food purchased from commissary." Id. at 22-24. Unlike in his other claims, plaintiff does not specify any constitutional basis for this claim and instead asks the Court to issue declarative relief "to inform the Defendant of the rights ... he has violated." Id. at 25. A broad reading of the Amended Complaint suggests that plaintiff seeks relief under the First Amendment, RLUIPA, and the Equal Protection Clause as to this claim.

With respect to plaintiff's First Amendment and RLUIPA claims, defendant Morris suggests that plaintiff has not satisfactorily pleaded that he faced a substantial burden by being

10

denied officially recognized participation in Ramadan fasting. Specifically, Morris argues that "a failure to provide food for breaking a religious fast, without more, does not violate RLUIPA where the inmate was able to or did purchase food from the commissary." [Dkt. No. 31] at 10 (citing Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007); Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007)). Because the Amended Complaint states that plaintiff *has* purchased his own food during Ramadan for the last several years, Morris reasons that the pleading does not allege any violation of RLUIPA or the First Amendment. Id.

Morris is correct. As observed above, a prison regulation imposes a substantial burden when it places "substantial pressure on an adherent to modify his behavior and to violate his beliefs or forces a person to choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion ... on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (internal quotations and citations omitted). In assessing whether a plaintiff has suffered a substantial burden, a district court "properly considers whether the inmate retains other means for engaging in the ... religious activity" he claims was hindered by official acts. See Shabazz v. Johnson, No. 3:12cv282, 2015 WL 4068590, at *8 (E.D. Va. July 2, 2015). Consistent with this, a prison regulation that merely makes "religious exercise more expensive or difficult" but is not "inherently inconsistent with [a prisoner's] beliefs" does not impose a substantial burden for the purposes of a RLUIPA or First Amendment claim. See, e.g., Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 735, 739 (6th Cir. 2007); Sullivan v. Younce, No. 3:15cv710, 2017 WL 655175, at *8 (E.D. Va. Feb. 16, 2017) (invoking Living Water standard), aff'd, 697 F. App'x 190 (4th Cir. Sept. 11, 2017).

11

Under the standard just articulated, the Amended Complaint fails to allege a substantial burden on plaintiff's ability to exercise his religious beliefs. Although plaintiff alleges that he was not on the Ramadan list and therefore did not receive meals to break his fast, he does not allege that he was prevented from fasting. For instance, he does not claim that any prison official forced him to eat during the denoted fasting window. Nor does the Amended Complaint allege that plaintiff was denied regular meals such that he was *required* to fast. What's more, plaintiff concedes that he has been able to purchase foods that comply with his religious beliefs and with which he can break his fasts at appropriate times. In this respect, the facts of this case are similar to those at issue in Richardson v. Welch, No. 7:17cv62, 2018 WL 4688742 (W.D. Va. Sept. 28, 2018), in which Judge Jones wrote:

> I conclude that VDOC policies do not substantially burden Richardson's religious practice of the NOI Month of Fasting. First, he can comply with the majority of his fasting practices simply by participating in the accommodations that the VDOC already provides during Ramadan, instead of observing his fast alone in December. When he is served food items during Ramadan that do not comply with his personal fasting practice, he can simply discard those items and eat the remainder of his meals. He has not presented evidence showing that doing so would deprive him of a significant portion of his nutritional intake.
>
> Second, if Richardson is intent on observing the fast in December, he can make choices under existing food service policies to comply with his dietary beliefs. During his self-administered December Month of Fasting, he can accept his Common Fare meals, as his program agreement requires, and then simply discard the breakfast and lunch meals. He may be able to save foods from the supper meal that are acceptable under his fasting practices and store them in his cell for four hours to be eaten after sundown. He can certainly purchase acceptable commissary food items to eat at the times permitted by his religious dietary beliefs. These options, available under existing policies, may cost Richardson money and leave him with somewhat fewer calories during the month than he might wish. These inconveniences and costs, however, do not prevent him from observing the fast. He also has not shown that they will impermissibly pressure him to abandon his fasting practice in December 2018 or in future years. Therefore, I will grant the defendants' Motion for Summary Judgment, and I will deny Richardson's motion as to his claims for injunctive relief under RLUIPA and § 1983.

12

Richardson, 2018 WL 4688742, at *5.

Finding no basis on which to deviate from Judge Jones's findings in Richardson, this Court will grant Morris's Motion to Dismiss as to the RLUIPA and First Amendment claims arising out of plaintiff's Ramadan allegations; however, the Court concludes that the Amended Complaint states a viable equal protection claim based on the allegations that defendant Morris denied plaintiff, an adherent of the NOGE, the ability to officially participate in Ramadan fasting despite the fact that adherents of the Nation of Islam were allowed to participate.

## IV.

For the reasons stated above, defendants' Motion to Dismiss will be granted in part and denied in part through an Order that will issue alongside this Memorandum Opinion.

Entered this 10th day of April 2023.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia