IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Michael Lasharn Collins,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    1:21cv219 (CMH/WEF)<br>) |
| J.D. Oates, et al.,<br>    Defendants. | )<br>)<br>) |

MEMORANDUM OPINION

This matter is before the Court upon a Motion for Summary Judgment ("Motion") [Dkt. No. 38] filed by defendants J.D. Oates, C. Washington, and B. Morris (collectively "defendants") in this civil rights action filed by Virginia state prisoner Michael Lasharn Collins ("plaintiff"). Alongside their Motion, defendants filed a Roseboro[1] notice advising plaintiff of his right to respond. Id. at 1-2. Despite receiving this clear guidance, plaintiff has neither filed a timely response to defendants' Motion nor requested additional time to do so.[2] As a result, the Court deems defendants' Motion ready for consideration. For the reasons that follow, the Motion will be granted, and this action will be dismissed.

---

[1] See Roseboro v. Garrison, 258 F.2d 309 (4th Cir. 1975).

[2] Plaintiff has submitted a document through which he expressed hope to "resolv[e] this complaint without further adjudication." See [Dkt. No. 40]. In that document, plaintiff expresses that he would be willing to accept the opportunity to purchase a particular religious medallion at his own expense. Id. To the extent this constitutes a settlement offer, the Court is unable to direct defendants to accept it. And to the extent plaintiff believes this document may serve as an adequate opposition to defendants' Motion for Summary Judgment, he is mistaken; the document fails to address any of the arguments defendants put forward in their Motion.

## I. Background

Plaintiff filed this action in early 2021, alleging that defendants—each of whom is employed at Deerfield Correctional Center ("DCC")—violated his rights under the First Amendment's Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Fourteenth Amendment's Equal Protection Clause. [Dkt. Nos. 1, 22, 25]. On April 10, 2023, the Court granted in part and denied in part a Motion to Dismiss defendants previously filed. Consistent with the Court's ruling with respect to that Motion to Dismiss, see [Dkt. Nos. 33, 34], only two claims remain active in this suit: (1) a claim that defendants violated plaintiff's rights under the First Amendment and RLUIPA by denying him the ability to purchase a customized religious medallion of his choosing and (2) a claim that defendants violated plaintiff's Fourteenth Amendment right to equal protection of the law by disallowing him from participating in Ramadan fasting despite allowing others to participate.

With respect to the two claims remaining before the Court, the following facts are not in dispute.[3] At all times relevant to this suit, plaintiff was a Virginia state prisoner housed at DCC, where defendant Oates served as Assistant Warden, defendant Washington served as an Inmate Manager, and where defendant B. Morris served as a Religious Advisor. [Dkt. No. 25] at 7, 8;

---

[3] By failing to respond to defendants' Motion for Summary Judgment, plaintiff has failed to abide by Local Civil Rule 56(B), which requires a nonmovant to provide "a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." See Local Civ. R. 56(B). Thus, the record does not contain any "cited materials" from plaintiff the Court is required to consider. See Fed. R. Civ. P. 56(c)(3) (a district court considering a motion for summary judgment "need consider only the cited materials"). Nevertheless, in deference to plaintiff's pro se status, this Court has reviewed the record as a whole and sought to identify any evidence supportive of plaintiff's claims. The statement of undisputed facts thus includes information derived from evidence including plaintiff's complaints, which are sworn, and documents submitted alongside those complaints.

[Dkt. No. 39-1] ("Morris Aff.") at 1, ¶ 1. Plaintiff has been an adherent of the Nation of Gods and Earths (or "NOGE") since 1989. [Dkt. No. 25] at 9.

## A. Facts Regarding NOGE Medallion

The Virginia Department of Corrections (or "VDOC") employs a policy informally referred to as the "single-vendor policy," pursuant to which VDOC inmates are required to purchase all personal property items, except publications, from their institution's commissary or through the designated VDOC contract vendor. Morris Aff. at 2, ¶ 6 & Enclosures ("Encl.") A, B. Thus, although inmates may in some instances special order certain items, they may do so only by working with the VDOC's contract vendor. Id. Under Operating Procedure (or "OP") 801.6, an item sourced by the contract vendor that is "designed to serve the same general purpose [as the specifically requested item] … is considered the same item" "regardless of quality or other personal preferences." Morris Aff. at 3, ¶ 9. In other words, under the single-vendor policy, inmates may order items not carried by their prison commissary, but they may not order or obtain customized, made-to-order items. Id.

To initiate an order for an item not regularly stocked by a prison commissary, an inmate must submit Form 801_F6 for review and approval. Morris Aff. at 3, ¶ 10. If prison staff members approve an inmate's request to purchase an item, the request is transmitted to the VDOC's contract vendor to procure it. Id. at 3-4, ¶ 11. If the contract vendor can locate an item that complies with the VDOC's rules and requirements, the commissary manager provides the inmate a description of the item and notifies him of what it would cost to purchase. Id. at 4, ¶ 12. If an inmate does not agree to purchase the item as sourced and priced by the contract vendor, he may not obtain it through other means. Id. at ¶ 13.

3

Operating Procedure 841.3 governs inmate religious programs and identifies religious items approved for inmate possession. Morris Aff. at 2, ¶ 8 & Encl. C, D, E. Pursuant to policy, inmates may possess a single religious necklace, which must be a white or yellow chain or strap twenty-four inches or fewer in length. Id. Any medallion, amulet, or pendant attached to the necklace may not exceed 1.5 inches in diameter. Id. Additionally, under OP 802.1, any necklace or other jewelry possessed by an inmate may not contain any stones or gems regardless of their value or lack thereof. Id. The VDOC's approved item list has included a "Nation of Gods and Earths Medallion" since late 2017. Id.

On July 12, 2018, plaintiff submitted a "Commissary Special Order"—also entitled Form 801_F6—attempting to obtain a NOGE medallion. Morris Aff. at 4, ¶ 14. On the form, plaintiff specifically requested a "24 inch [] 10 karat gold chain with 10 karat gold Nation of Gods and Earths Medallion." [Dkt. No. 1-3] at 8. After reviewing plaintiff's special-order request, the Assistant Warden of DCC, J. Halsey-Harris, approved the request on August 6, 2018. Id.

The VDOC's contract vendor sourced and priced a medallion pursuant to plaintiff's request and, on October 10, 2018, provided plaintiff a description of the item it had sourced and informed plaintiff of its price. Morris Aff. at 4, ¶ 15 & Encl. H. The item offered to plaintiff was an "18 inch silver necklace," see [Dkt. No. 1-3] at 4, bearing a black and yellow NOGE Universal Flag on a white background within concentric black and white circles, see Morris Aff. at 4, ¶ 15 & Encl. H. But according to plaintiff, the offered item did not "provide an accurate shape or color" of the NOGE flag, see id. at 5.[4]

---

[4] Plaintiff has provided a document bearing an image of the NOGE Universal Flag, underneath which he wrote that a medallion bearing this image "can be worn without the [exterior] circle" and "may be all gold, or it must be black and yellow." [Dkt. No. 1-3] at 4.

4

Plaintiff refused to purchase the medallion offered to him and, on July 8, 2019, submitted a new request, this time stating that the medallion he desired would be "made with 10K gold & onyx ... in the form of a thin plate." Morris Aff. at 4-5, ¶¶ 16-17 & Encl. I. He further specified that "the points [of the star on the medallion] may touch the outer ring & the star can be attached to the seven, or the tip of the moon." Morris Aff. at 5, ¶ 17 & Encl. I. On the form, plaintiff identified a particular company—Bennett Brothers—that he believed could provide him the item he sought. See id. Defendant Morris contacted the vendor plaintiff identified but learned that the company had been out of business for several years. Morris Aff. at 5, ¶ 18. Thus, in January 2020, defendant Washington contacted plaintiff to inform him that the NOGE medallion located by the VDOC's contract vendor was plaintiff's only option if he wished to purchase such an item. [Dkt. No. 25] at 14.



VDOC Vendor's Medallion      Collins's Depiction of a Medallion

*Screenshot from Defendants' Memorandum in Support of Motion for Summary Judgment Depicted on the left of this image is the medallion offered to plaintiff. Depicted on the right is the example plaintiff submitted alongside his second Commissary Special Order Form. See Morris Aff. at Encl. H, I.*

Plaintiff again declined to purchase the medallion offered to him, asserting that "the picture of the product was like offering a Jewish person a five-point star, and that it did not accurately represent his belief." [Dkt. No. 25] at 14.

B.   **Facts Regarding Plaintiff's Participation in Ramadan Fasting**

Virginia Department of Corrections OP 841.3 establishes the protocols for allowing inmates to exercise their religious beliefs without sacrificing facility security, safety, order, space, and resources. [Dkt. No. 39-2] ("Brown Aff.") at 1, ¶ 4. Pursuant to this OP, the adherents of each VDOC-recognized religion are eligible to participate in the holidays officially recognized as being associated with that religion. Id. at 2, ¶ 6. The holy days associated with the NOGE are "Allah's Physical Birthday," "Show and Prove," "Allah Tribute Day," and "Year One/Day One." Id. at ¶ 7. At the time this action was filed, Ramadan was not a holy day recognized as being observed by the NOGE, although it was recognized as a Muslim holy day. Id. at ¶¶ 7-8. Other religions that were approved to observe Ramadan were the Nation of Islam and the Moorish Science Temple of America. Id. at ¶ 8. As a result, plaintiff—an NOGE adherent—was not permitted to formally participate in Ramadan fasting for several years and incurred expenses by purchasing his own food to ensure he could participate on his own in an informal manner. [Dkt. No. 25] at 22-24.

Inmates like plaintiff may request a new holy day recognition for their religions by submitting a form entitled "Request 841_F1" to the Facility Unit Head or designee. Brown Aff. at 2, ¶ 10. Upon receiving such a request, the Facility Unit Head or designee reviews the request and recommends the request be approved, approved with restrictions, or disapproved. Id. at 3, ¶ 11. The Unit Head then forwards his or her recommendation to the VDOC's Faith Review Committee, which is comprised of VDOC staff who advise and make decisions regarding religious accommodations and their impacts on the security of VDOC facilities and the penological interests of the VDOC. Id. If the Faith Review Committee approves a requested

holy day observance, the Master Religious Calendar is updated to ensure that it may be observed in every VDOC facility by the adherents of the requesting religion. Id. at ¶ 12.

On December 14, 2021, the Faith Review Committee reviewed plaintiff's request to add Ramadan to the list of holy days approved for observance by the NOGE. Id. at ¶ 13. The Committee declined to add Ramadan on the basis that the United States District Court for the Eastern District of Virginia had not recognized Ramadan as a holy day associated with the NOGE. Id. Plaintiff did not appeal this decision. Id. at ¶ 15.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Analysis

As observed above, only two claims are currently at issue: a claim that defendants violated plaintiff's rights under the First Amendment and RLUIPA by denying him the NOGE

medallion of his choosing and a claim that defendants violated his right to equal protection by ensuring he could participate in VDOC-sponsored fasting to observe Ramadan. As explained below, defendants correctly argue that plaintiff's remaining claims are without merit.

A.  **First Amendment and RLUIPA Claims Regarding NOGE Medallion**

Here, defendants assert that their actions did not lead to any impermissible burden upon plaintiff's ability to exercise his religion and that, even if they did, their actions were permissible because they were in compliance with a policy that was "the least restrictive means of furthering a compelling governmental interest." See [Dkt. No. 39]. The Court agrees with each of defendants' arguments.

"One who is put behind prison walls does not automatically surrender all rights." McDonough v. Director of Patuxent, 429 F.2d 1189, 1192 (4th Cir. 1970). Consistent with this principle, prisoners can expect to retain a right to reasonable opportunities for free exercise of religious beliefs, both under the First Amendment and RLUIPA. See Turner v. Safley, 482 U.S. 78, 89 (1987); Cruz v. Beto, 405 U.S. 319, 322 (1972); 42 U.S.C. § 2000cc-1(a). Under either law, a plaintiff bears the burden to demonstrate that the conduct he is challenging substantially burdens his exercise of religion. See Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981); 42 U.S.C. § 2000cc-2(b). A prison regulation imposes a substantial burden when it places "substantial pressure on an adherent to modify his behavior and to violate his beliefs or forces a person to choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion ... on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (internal quotations and citations omitted).

With that said, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Thus, the Supreme Court has held that prison restrictions that impact the free exercise of religion but which are related to legitimate penological objectives do not violate the First Amendment. See Turner, 482 U.S. at 89-91. And when a burden on a prisoner's exercise of religion arises from a policy that is "the least restrictive means of furthering [a] compelling governmental interest," that policy does not violate RLUIPA. See 42 U.S.C. § 2000cc-1(a).

The Court first briefly addresses the merits of plaintiff's First Amendment and RLUIPA claims. There is no dispute in this action that plaintiff sought an NOGE medallion that was "all gold" or "black and yellow" and came "in the form of a thin plate." Further, plaintiff explained to defendants that "the points [of the star on the medallion] may touch the outer ring & the star can be attached to the seven, or the tip of the moon."

The record reflects that the medallion offered to plaintiff matched these criteria:



VDOC Vendor's Medallion     Collins's Depiction of a Medallion

Indeed, the medallion offered to plaintiff contained a black and yellow flag, came in the form of a thin plate, and depicted a seven with a star attached to it. Although plaintiff later rejected this medallion as in conflict with his beliefs, defendants appear to have complied with plaintiff's

9

expressed requirements. Consequently, the Court concludes that defendants did not force plaintiff to choose between following the precepts of his religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of his religion on the other hand. Accordingly, defendants did not violate the First Amendment or RLUIPA.

Defendants next argue that, even if plaintiff's inability to purchase a particular NOGE medallion did impose a substantial burden on his ability to exercise his religious beliefs, plaintiff's claim still fails because "[a]llowing [plaintiff] to purchase a medallion only through the contract vendor was ... the least restrictive means of furthering [a compelling governmental interest]." [Dkt. No. 39] at 22. Indeed, they assert that this case is indistinguishable from Faver v. Clarke, 24 F.4th 954 (4th Cir. 2022), a case in which the Fourth Circuit addressed a claim raised by a Virginia state prisoner who sought to purchase prayer oil but whose beliefs did not permit him to purchase that oil from the VDOC's contract vendor. Id. The Fourth Circuit in Faver ultimately concluded that the VDOC's "single-vendor policy"—and the accompanying prohibition on acquiring prayer oil from a different source—was the least restrictive means of furthering a compelling governmental interest, namely prison security and efficiency, and that the prisoner therefore could not prevail on his RLUIPA claim. Id.

Having been supplied additional evidence and argument since its opinion addressing defendants' Motion to Dismiss, the Court now agrees that the reasoning applied in Faver also applies here. By way of background, in its April 10, 2023 opinion, the Court questioned whether the VDOC's contract vendor's interaction without outside vendors constituted an exception to the VDOC's single-vendor policy. See [Dkt. No. 33]. The record now makes clear that the VDOC's contract vendor *is* the "single vendor" responsible for sourcing items not regularly stocked in prison commissaries. That it must interface with outside businesses to locate certain

items does not constitute an exception to the single vendor policy because the contract vendor remains the only vendor through which inmates may purchase approved items.

A comparison to Faver is instructive. There, the Fourth Circuit explained that the plaintiff had requested to purchase prayer oil directly from a company called "Halalco" but that the VDOC's single-vendor policy made such an option impossible. See Faver, 24 F.4th at 957. It also upheld the district court's judgment that "case-by-case exceptions for the purchase of religious items" from outside vendors would be inappropriate. Id. at 958. In this case, plaintiff sought the chance to purchase a very specific NOGE medallion and declined the particular item the contract vendor was initially able to locate. Plaintiff then provided the name of a specific vendor—Bennett Brothers—he believed would be able to provide the item he sought; however, plaintiff's identified business was not in operation and thus could not carry out plaintiff's request, whether facilitated by the contract vendor or otherwise. Consequently, plaintiff was left with the option to purchase the medallion originally offered to him or not purchase a medallion at all because he could not, pursuant to the single-vendor policy, directly contact businesses to have his medallion custom made.

Having compared this action with Faver, the Court sees no basis for deviating from the Fourth Circuit's controlling precedent; because the VDOC's single-vendor policy has been held to be the least restrictive means of furthering the compelling governmental interests of prison security and efficiency, any impact the policy had on plaintiff's ability to exercise his religious beliefs did not constitute a violation of his rights under RLUIPA. And because the First Amendment provides less protection than RLUIPA, see Lovelace v. Lee, 472 F.3d 174 (4th Cir. 2006), the Court's finding that plaintiff is not entitled to relief under RLUIPA means that plaintiff's First Amendment claim necessarily fails.

11

B.  **Equal Protection Claim Regarding Participation in Ramadan Fasting**

Next at issue is plaintiff's equal protection claim. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In the prison context, disparate treatment is not constitutionally offensive if it is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001).

Here, the basis of plaintiff's equal protection claim is that he, an adherent of the NOGE, was not allowed to formally participate in Ramadan fasting even though members of the Nation of Islam were. Although plaintiff asserts that the foundational text of the NOGE "originated from the NOI," see [Dkt. No. 25] at 23, the parties do not dispute that the NOGE and NOI constitute entirely distinct religions. In fact, in his operative Complaint, plaintiff concedes the NOGE observes only four honor days and does not list Ramadan as one of them. See [Dkt. No. 25] at 9-10 (stating that, following the decision in Coward v. Robinson, 276 F. Supp. 3d 544 (E.D. Va. 2017), VDOC officials "had to afford the NOGE the right[] ... to observe our four honor days"). There is no dispute, though, that the Nation of Islam had been officially permitted to observe Ramadan due to its centrality to the religion. Consequently, the Court concludes that plaintiff was not similarly situated to the adherents of the NOI to whom he compares himself and that his equal protection claim thus fails.

Even to the extent one were to consider adherents of the NOI and the NOGE to be similarly situated due to their shared Islamic-based beliefs and further find that an equal

12

protection violation occurred, the Court finds that defendants are entitled to qualified immunity on the basis that a judicial order issued from this Court in 2017 recognized only four religious honor days associated with the NOGE: "Allah's [] Birthday," "Show and Prove Day," "Annual Family Day," and "Day One." See Coward v. Robinson, 276 F. Supp. 3d 544, 553-54 (E.D. Va. 2017). There is no dispute in this action that the VDOC respected plaintiff's and other inmates' right to observe these days and finds that, in light of this opinion, it would not have been "clear to a reasonable officer" that denying plaintiff formal participation in Ramadan while allowing NOI members to participate would have constituted a violation of plaintiff's right to equal protection of the law. See Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (observing that an officer is entitled to qualified immunity if the facts do not support the existence of any constitutional violation or the right allegedly violated was not clearly established such that it would have been "clear to a reasonable officer that his conduct was unlawful in the situation confronted").[5]

## IV. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment will be granted in an Order that will accompany this Memorandum Opinion.

Entered this 10th day of Jan. 2024.

Alexandria, Virginia

/s/ Claude M. Hilton
United States District Judge

---

[5] The Court observes that, "[o]nce [a] defendant raises a qualified immunity defense, the plaintiff carries the burden of showing that the defendant's alleged conduct violated the law and that such law was clearly established when the alleged violation occurred." Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993) (internal citation omitted). By failing to oppose defendants' Motion for Summary Judgment, plaintiff has failed to satisfy his burden in opposing defendants' qualified immunity defense.